NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

In re:

ANDREA STEINMANN DOWNS,

               Debtor.

_____

NORIO, INC.,

               Appellant,

v.

THOMAS H. CASEY, Chapter 7 Trustee,

               Appellee.

BAP No. CC-19-1160-TaSG

Bk. No. 8:16-bk-12589-CB

MEMORANDUM[*]

Argued and Submitted on November 21, 2019
at Pasadena, California

Filed – November 25, 2019

Appeal from the United States Bankruptcy Court
for the Central District of California

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

Honorable Catherine E. Bauer, Bankruptcy Judge, Presiding

Appearances:    Mark D. Johnson of Duringer Law Group PLC argued for
                appellant; Jeffrey Ian Golden of Weiland, Golden,
                Goodrich LLP argued for appellee.

Before: TAYLOR, SPRAKER, and GAN, Bankruptcy Judges.

## INTRODUCTION

Andrea and Timothy Downs each held a 50% interest in a corporation, Downs Holdings, Inc. It held limited liability corporation ("LLC") and limited partnership ("LP") ownership interests. Eventually, the Downs agreed to dissolve the corporation and, as shareholders, passed a corporate resolution electing dissolution.

But other than this initial act, they failed to comply with California's requirements for corporate dissolution. And, in particular, they did nothing further when they learned that a formal change in ownership of its investment interests required further efforts.

Several years later, Ms. Downs sought chapter 11[1] bankruptcy protection; prepetition, she borrowed $50,000 from Norio, Inc., ("Norio") to finance this effort, and pledged "her" interests in the LLC and LP as collateral.

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code. 11 U.S.C. §§ 101–1532.

After her case was converted to chapter 7, the chapter 7 Trustee objected to the secured status of Norio's filed claim; he argued that Downs Holdings, not Ms. Downs, owned the interests. The bankruptcy court sustained the objection. We acknowledge that some of the bankruptcy court's findings lack support in the record, but we ignore harmless error because the bankruptcy court's ultimate conclusion is correct: Downs Holdings owned the relevant assets, and Ms. Downs could not pledge them to Norio as collateral for the loan.

Accordingly, we AFFIRM.

## FACTS

Mr. Downs and Ms. Downs created Downs Holdings, Inc. as an investment vehicle. Each was a 50% shareholder; Mr. Downs was secretary and Ms. Downs was president. And it held interests in, among other things, Ten Twenty University, LLC ("Ten Twenty") and VPM Westchester LP ("Westchester LP").

As is typical of LLCs, Ten Twenty's LLC agreement restricted the voluntary or involuntary transfer or pledge of membership interests unless the member complied with certain conditions; it also provided that attempted transfers or pledges would be null and void. The Downs signed the agreement on Downs Holdings' behalf.

In January of 2012 and after the breakdown of the marriage, the Downs, as shareholders, adopted a unanimous resolution to dissolve

Downs Holdings and to assign responsibility for implementation of the resolution to Mr. Downs. And in other documents dated January 31, 2012, Downs Holdings directed the corporations managing the investment interests, Metropolitan Management Company and VPM Management, to distribute the payments and monies owed to Downs Holdings to each shareholder separately, 50% to Mr. Downs and 50% to Ms. Downs.

Subsequently, Mr. Downs sent VPM Management a letter asking it to treat the Downs as separate interest holders in Westchester LP. Although it is not in the record, it appears that a similar letter was sent to Metropolitan Management in regard to Ten Twenty; the record contains a response stating that Metropolitan would send Downs Holdings' distributions directly to its shareholders as directed. But, the response further clarified that Downs Holdings "will formally remain as the member" for "legal and tax purposes." And it advised that, if the Downs wanted to attempt formal transfer of the LLC interests, they must satisfy the applicable transfer restrictions and provide further documentation.

Time passed. In March 2015, the Downs exchanged emails about whether Downs Holdings owed taxes. In October, Ms. Downs indicated that she was considering selling her half interest in Downs Holdings. In March 2016, they again exchanged emails about Downs Holdings, and Mr. Downs referred to the dissolution resolution.

On June 16, 2016, Ms. Downs borrowed $50,000 from Norio, Inc.; she

pledged interests in Ten Twenty and Westchester LP as collateral.

Three days later, she filed a chapter 11 petition.

In September 2017, the bankruptcy court converted the case to chapter 7. Norio thereafter filed a $50,000 secured proof of claim ("Claim 10").

In March 2018, the Trustee sought to sell the estate's interest in "certain membership interests" owned by Downs Holdings; he included a declaration from Metropolitan Management that it was prepared to facilitate the sale and transfer of the Ten Twenty interests. Norio objected because the sale would not protect its secured interests. The bankruptcy court denied the motion without prejudice.

The Trustee then sought to disallow Claim 10 as a secured claim because Ms. Downs could not personally pledge Downs Holdings' interests in Ten Twenty and Westchester LP. Norio opposed and argued that Downs Holdings was dissolved in January 2012, causing the membership interests to transfer to the company's shareholders by operation of law.

The bankruptcy court entered a memorandum decision and separate order disallowing Claim 10 as secured. Norio timely appealed.[2]

---

[2] The bankruptcy court's decision rendered Norio unsecured as to both Westchester LP and Ten Twenty. On appeal, Norio focuses exclusively on Ten Twenty; this decision to not discuss Westchester LP is intentional. Appellant's Opening Br. at 6 n.3 ("Norio chooses again to omit much discussion of [Westchester LP] and focus on Ten Twenty in this appeal for brevity's sake. However, should the BAP reverse the

(continued...)

Later, the Trustee sold, or obtained approval of sale, of the Debtor's interests in Downs Holdings in cooperation with Mr. Downs.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(B). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Did the bankruptcy court err when it sustained the Trustee's objection to Norio's proofs of claim?

## STANDARD OF REVIEW

In the claim objection context, we review the bankruptcy court's legal conclusions de novo and its findings of fact for clear error. *Lundell v. Anchor Const. Specialists, Inc. (In re Lundell),* 223 F.3d 1035, 1039 (9th Cir. 2000). A finding is "clearly erroneous" when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (quotation marks omitted).

We may affirm for any reason in the record. *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1213 (9th Cir. 2019) ("[W]e may affirm on any

---

[2](...continued)
Bankruptcy Court Claim Decision, Norio's interest in [Westchester LP] should also be deemed secured."). We do not reverse. And we determine that to the extent there is any argument related to the interest in Westchester LP that is additional to or different from the points raised on appeal as to Ten Twenty that such argument is waived. *Padgett v. Wright*, 587 F.3d 983, 985 n.2 (9th Cir. 2009).

ground finding support in the record. If the decision below is correct, it must be affirmed, even if the [] court relied on the wrong grounds or wrong reasoning." (internal quotation marks omitted)). That is, we ignore errors or defects that do not affect the substantial rights of the parties. 28 U.S.C. § 2111.

## DISCUSSION

In a perfunctory argument, the Trustee contends that this appeal is equitably moot in part because he has already sold the Ten Twenty membership interest to a bona fide purchaser and distributed some of the proceeds. But the appeal is not moot because Norio seeks to recover its secured claim from the sale proceeds.[3]

**Relevant law: the bankruptcy claims process and California corporate dissolution.** A creditor asserts a claim in bankruptcy by filing a proof of claim. 11 U.S.C. § 501(a); Fed. R. Bankr. P. 3001, 3002. A filed claim is allowed unless a party in interest objects. 11 U.S.C. § 502(a). And if an interested party objects, the bankruptcy court, after notice and a hearing,

---

[3] At oral argument, the Trustee suggested that an order provided that the lien did not attach to the proceeds. The Trustee bears the heavy burden to show equitable mootness. *Motor Vehicle Cas. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.)*, 677 F.3d 869, 880 (9th Cir. 2012). The only sale order in the record says nothing of the sort; it simply grants the Trustee's motion. And the Trustee's sale motion explicitly requested an order allowing the sale of the membership interests free and clear of the alleged lien but providing for the alleged lien to attach to the proceeds subject to the Trustee's objection. Finally, the Trustee does not suggest that all of the proceeds have been distributed.

must determine the amount of the claim "as of the date of the filing of the petition" and allow it accordingly. 11 U.S.C. § 502(b).

Corporate dissolution in California proceeds in at least three stages.

First, the corporation elects to wind up and dissolve. Cal. Corp. Code § 1900. A corporation may, before it begins distributing assets, revoke this election to dissolve. Cal. Corp. Code § 1902(a).

In most instances, the corporation must notify the California Secretary of State by filing a certificate "evidencing" the election to wind up. Cal. Corp. Code § 1901(a). That said, if the dissolution election is made under California Corporate Code § 1900(a) by the vote of all the outstanding shares and a statement is added to the later dissolution certificate, then "the separate filing of the certificate of election pursuant to this section is not required." Cal. Corp. Code § 1901(c). Similarly, if a corporation revokes its election, it must file a "certificate evidencing the revocation . . . ." Cal. Corp. Code § 1902(a).

These notification provisions "were enacted for the convenience of the Secretary of State and the public, and for the protection of the directors and trustees, but strict compliance therewith is not necessary." *Herschfelt v. Knowles-Raymond Granite Co.*, 130 Cal. App. 2d 347, 351 (1955). The statute's text confirms this: the filed certificate *evidences* the election; thus, in some circumstances the certificate need not be filed.

Second, the corporation winds up. Voluntary wind-up proceedings

begin when the resolution is adopted. Cal. Corp. Code § 1903(a). During the wind-up process, the "board shall continue to act as a board and shall have full powers to wind up and settle its affairs, both before and after the filing of the certificate of dissolution." Cal. Corp. Code § 1903(b). The corporation "shall cease to carry on business except to the extent necessary for the beneficial winding up thereof and except during such period as the board may deem necessary to preserve the corporation's goodwill or going-concern value pending a sale of its business or assets, or both, in whole or in part." Cal. Corp. Code § 1903(c).

Third, the corporation files a certificate of dissolution. Once a corporation has been "completely wound up without court" supervision, the directors sign and file a certification of dissolution with the Secretary of State. Cal. Corp. Code § 1905(a). As part of that certificate, the directors state that the final tax return has been filed. Cal. Corp. Code § 1905(a)(6). Once that certificate is filed, "thereupon the corporate powers, rights, and privileges of the corporation shall cease." Cal. Corp. Code § 1905(b).

**The bankruptcy court correctly disallowed Norio's claim as secured.** We pause to note that, as Norio highlights on appeal, some of the bankruptcy court's explicit factual findings are either without support in the record[4] or not relevant. But these deficiencies are not fatal, they do not

---

[4] In a deposition, Mr. Downs testified that his previous statements, made under

(continued...)

affect our review of the record, and we ignore harmless error—the bankruptcy court disallowed Norio's claim only to the extent it was a secured claim. Norio acknowledges that Downs Holdings initially owned the assets. The decisive question, then, is: did Norio establish that Downs Holdings transferred the assets to Ms. Downs?

On Norio's account, Downs Holdings fully dissolved in early 2012 upon its dissolution election, and, consequently, its assets were distributed to its shareholders as a matter of law. The Trustee disagrees; he argues that Downs Holdings did not complete dissolution because it did not file either a certificate with the Secretary of State or its final tax return and, as a result, it continued to own the relevant assets. The bankruptcy court concluded that Downs Holdings was not dissolved and, implicitly, that it owned the assets. We agree with the bankruptcy court.

Here, neither party disputes that in January 2012, Downs Holdings' board voted to dissolve the corporation. And we have no doubt that Mr. Downs and Ms. Downs, in fact, intended corporate dissolution. At the same time, the parties also do not dispute that Downs Holdings did not file a certificate of that election with the Secretary of State; they disagree about whether such a certificate was necessary. We do not view the presence or

---

[4](...continued)
penalty of perjury, that he was the president of Downs Holdings were erroneous. He was never president. The Trustee also acknowledges that he was not the CEO as the bankruptcy court found.

absence of the initial certificate as conclusively probative of the corporation's status. Instead, it is emblematic of Downs Holdings' lax compliance with the dissolution prerequisites.

In particular, the evidence presented to the bankruptcy court reflects that Downs Holdings failed to transfer its ownership interests in Ten Twenty. Replying to the request for division of Downs Holdings' interest in Ten Twenty between Mr. Downs and Ms. Downs, Metropolitan Management noted that it could not do so without considering the Ten Twenty agreement's restrictions on transfer of interests and without documenting the transfer with further paperwork. Nonetheless, it agreed to send separate payments to the Downs. The record reflects that, having achieved their desired goal of having payments sent to them separately, Mr. Downs and Ms. Downs did not further pursue a formal transfer of the Ten Twenty ownership interest.

As a result, Downs Holdings never proceeded farther than the first step toward corporate dissolution: a formal election to dissolve. It did not file a statement evidencing that election with the secretary of state. It did not otherwise wind up its business. It did not seek to formally transfer its assets. It did not file final tax returns. Nor did it conclude winding up and file the final dissolution certificate.

This undermines Norio's suggestion that Downs Holdings' assets transferred as a matter of law upon the shareholders' vote to dissolve and

11

without any formal action. To start, the statutory language Norio cites does not speak of an automatic transfer of property; instead, it describes the phases of the wind up process. Cal. Corp. Code § 2004 ("After determining that all the known debts and liabilities of a corporation in the process of winding up have been paid or adequately provided for, the board shall distribute all the remaining corporate assets among the shareholders according to their respective rights and preferences or, if there are no shareholders, to the persons entitled thereto."). Nor does Norio cite a case for the proposition that a corporation's singular statement of an intent to wind up its business works an asset transfer as a matter of law.

Second, Norio's cited cases are distinguishable. Several involved and assumed what is not present here: a completed dissolution. *Kwok v. Transnation Title Ins. Co.*, 170 Cal. App. 4th 1562, 1565–66 (2009) ("On December 15, 2005, appellants' accountant filed a 'Limited Liability Company Certificate of Cancellation' with the California Secretary of State stating that the LLC had been dissolved by a vote of all members."); *Brodie v. Barnes*, 56 Cal. App. 2d 315, 321 (1942) ("In the hearing before the trial court the parties stipulated that the corporation had been dissolved . . . .") Yet another involved copyright rights, which are readily transferrable, as opposed to the alleged transfer of an interest in an LLC where the governing documents expressly prohibit transfer without consent. *See Fantasy, Inc. v. Fogerty*, 664 F. Supp. 1345, 1356 (N.D. Cal. 1987) ("Argosy

12

succeeded to the ownership of the Jungle copyright by operation of law. Argosy, as Galaxy's shareholder, acquired all assets of Galaxy including the Jungle copyright upon Galaxy's 1970 dissolution." (citations omitted)), *aff'd*, 984 F.2d 1524 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994).

Next, California's corporate code undermines Norio's position. California's statutes provide for a corporation's continued existence as it winds itself up and formally divides and conveys its property. Cal. Corp. Code § 2010(a). They also explain what happens to forgotten assets:

> Any assets inadvertently or otherwise omitted from the winding up continue in the dissolved corporation for the benefit of the persons entitled thereto upon dissolution of the corporation and on realization shall be distributed accordingly.

Cal. Corp. Code § 2010(c). Put differently, corporate assets remain corporate assets until their actual disposition.

In short, Downs Holdings failed to formally transfer its interest in Ten Twenty to its shareholders—it was not guaranteed that it could, and determining if it could would require additional paperwork and cost. And even if Norio is correct and Downs Holdings actually wound up and dissolved, its inadvertent (or otherwise) omission of the LLC assets from the dissolution process meant that they remained in the otherwise dissolved corporation.

In short, Norio has not shown that the assets transferred from Downs Holdings to Ms. Downs. So the bankruptcy court did not err in sustaining

13

the Trustee's objection to Norio's secured status.

## CONCLUSION

Based on the foregoing, we AFFIRM.